# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEVEN Z ENTERPRISES, INC.,** *et al.*, | CIVIL ACTION NO. 2:17-CV-740 |
| | (Chief Judge Conner) |
| **Plaintiffs** | |
| v. | |
| **GIANT EAGLE, INC.,** | |
| **Defendant** | |

## MEMORANDUM

In November 2018, this court dismissed several claims in plaintiffs' amended and supplemental complaints pursuant to Federal Rule of Civil Procedure 12(b). One plaintiff with a claim dismissed, Mon Valley Foods, Inc. ("Mon Valley"), subsequently filed a related action in state court. Defendant Giant Eagle, Inc. ("Giant Eagle"), moves to enjoin "relitigation" of a specific issue in that state-court proceeding. (Doc. 137). We will deny Giant Eagle's motion.

## I. Factual Background & Procedural History

A thorough recitation of the background and numerous claims in this case appears in this court's November 6, 2018 memorandum addressing Giant Eagle's motions to dismiss, familiarity with which is presumed. (See Doc. 118 at 1-5). The instant motion focuses on one specific count dismissed from the supplemental complaint: Mon Valley's breach of contract claim against Giant Eagle regarding the "Fisher Heights" store and its related sublease (Count XXII).

In that claim, Mon Valley asserted that Giant Eagle, in retaliation for plaintiffs filing the instant lawsuit, wrongfully attempted to terminate the sublease

agreement between the two parties for the Fisher Heights store. Mon Valley alleged that according to Giant Eagle's calculations—which Mon Valley did not dispute—it "should have provided notice to extend the [sublease] by December 31, 2017," twelve months prior to the end of the then-current term, but did not provide notice until "January 31, 2018." (Doc. 79 ¶ 614). Mon Valley further alleged that Giant Eagle had "suffered no harm by any late notice to extend the Sublease." (See id. ¶ 615). Mon Valley claimed that Giant Eagle was unreasonably refusing to extend the sublease "as a tactic to intimidate and pressure Mon Valley [] to drop this litigation, not for any legitimate purpose," even though Mon Valley conceded that its notice was "provided one month late and *eleven* months before the end of the term." (Id. ¶¶ 301, 616).

We reviewed the supplemental complaint, the attached contracts at issue, and the parties' briefing and held that Count XXII failed to state a claim for breach of contract. The supplemental complaint averred that notice to extend the sublease was due by December 31, 2017—twelve months prior to the end date (December 31, 2018) of the then-current lease term. Mon Valley repeatedly admitted that it had provided its notice one month late. Accordingly, we found that Giant Eagle's alleged conduct—providing notice that the sublease would terminate as of December 31, 2018—did not contravene any portion of the attached sublease agreement. As we explained, paragraph 2 of the sublease unambiguously states that if notice of Mon Valley's "intention to extend the sublease is not received by [12 months prior to the end of the then-current period], this Sublease *shall terminate* at the end of the then current term." (Doc. 118 at 16 (emphasis added) (quoting Doc.

2

79-36 ¶ 2)). Mon Valley's allegations thus failed to identify any conduct by Giant Eagle that could be considered a breach of the sublease agreement, a required element for a breach of contract claim.

In closing, we noted that Mon Valley had not pled "that the parties waived or amended the deadline to exercise the option" to extend the sublease. (Id.) We additionally observed that Mon Valley had attempted to amend its pleading through its briefing, a tactic that is expressly prohibited by binding Third Circuit precedent. (Id. at 16 n.7). Mon Valley did not amend its supplemental complaint as a matter of course after being served with Giant Eagle's motion to dismiss, see FED. R. CIV. P. 15(a)(1)(B), nor did it seek leave of court to correct Count XXII's deficiencies.

In December 2018, Mon Valley initiated state-court litigation via a praecipe for a writ of summons. The proposed state-court complaint that Mon Valley intends to file, after the parties' motion to seal the docket is resolved, asserts three causes of action against Giant Eagle. In particular, Count I seeks declaratory relief regarding Giant Eagle's attempts to terminate the Fisher Heights sublease. Giant Eagle subsequently filed the instant motion "to enjoin relitigation in state court." (Doc. 137). Giant Eagle claims that Mon Valley is attempting to relitigate an issue in state court that we have already decided. The motion is fully briefed and ripe for disposition.

## II. Standard of Review

Under the Anti-Injunction Act, 28 U.S.C. § 2283, federal courts "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to

3

protect or effectuate its judgments." 28 U.S.C. § 2283. The Act's "core message" is one of comity and respect for state courts, generally barring federal courts from interfering in state-court proceedings. Smith v. Bayer Corp., 564 U.S. 299, 307 (2011); Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988). As such, the "three specifically defined exceptions" identified in the Act are meant to be interpreted narrowly. Smith, 564 U.S. at 306 (quoting Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970)).

The third exception is often referred to as the "relitigation exception." See id. It was intended "to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." Chick Kam Choo, 485 U.S. at 147. The relitigation exception is grounded in long-established concepts of claim and issue preclusion. Id. Before a party may assert this exception, two requirements must be satisfied: (1) the claim or issue sought to be enjoined from being litigated in state court must have been presented to and "actually decided" by the federal court; and (2) the party whose litigation would be barred by the state-court injunction generally must have been a party to the federal suit. Smith, 564 U.S. at 307-08. Determining the preclusive effect of prior litigation, however, is "usually the bailiwick of the *second* court." Id. at 307. Accordingly, issuing an injunction that essentially dictates to other courts the preclusion consequences of a federal judgment is considered "heavy artillery." Id. Such an injunction is authorized only "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Parsons Steel, Inc.

4

v. First Ala. Bank, 474 U.S. 518, 525 (1986) (quoting Atl. Coast Line R.R. Co., 398 U.S. at 295).

### III. Discussion

There is no dispute that the "same party" requirement of the relitigation exception is satisfied. The parties disagree, however, whether the "same issue" is being presented in state court. Giant Eagle claims that Mon Valley's state-court action seeks to litigate, *inter alia*, the issue of whether Mon Valley's notice to extend the sublease of the Fisher Heights store was timely, which Giant Eagle claims has already been decided by this court. Giant Eagle maintains that we should enjoin any attempt at "a second bite at the apple" in state court to "protect" our judgment. (Doc. 137 at 4).

Mon Valley counters that the state-court litigation involves "different claims based on different facts that raise different issues," making the relitigation exception inapt. (Doc. 151 at 2). It also argues that the relitigation exception does not apply because the November 6, 2018 order was not a final judgment but rather an interlocutory order. Mon Valley alternatively contends that even if the exception applies and an injunction *may* issue, Giant Eagle has failed to show that an injunction *should* issue.

#### A. Relitigation Exception Applies

It is necessary at the outset to clarify what we did and did not decide in our November 6, 2018 opinion because we disagree with both parties' characterizations of the issue we resolved. Contrary to Mon Valley's contentions, we did not address a claim for "retaliation." (See Doc. 151 at 1, 3, 6, 13). In fact, we specifically

5

explained that because there is no such cause of action as "Breach of Contract – Retaliation," we were construing all counts so denominated as breach of contract claims. (Doc. 118 at 8 n.1).

We repudiate Mon Valley's assertions that we "declined" to "parse the terms of the Fisher Heights sublease and the related 'overlease'" and failed to consider Mon Valley's arguments when ruling on the Rule 12(b)(6) challenge. (Doc. 151 at 4, 6 (citing Doc. 118 at 16 n.7)). No contractual terms in those agreements needed to be "parsed" because Mon Valley admitted that: (1) the then-current lease period ended on December 31, 2018; (2) notice to extend the lease was due by December 31, 2017; and (3) Mon Valley provided its notice one month late. Under these admitted facts, the plain language of the Fisher Heights sublease made clear that it would terminate automatically as of December 31, 2018.

What we "declined" to do is permit Mon Valley to redraft the supplemental complaint through its briefing, which contained contradictory allegations. (See Doc. 98 at 15-18). Mon Valley's brief in opposition to Giant Eagle's motion to dismiss claimed that the then-current lease term ended on December 31, *2017*, notice to extend the lease was due by December 31, *2016*, and therefore Giant Eagle "waived the enforceability of the timeliness requirement under the Sublease." (See id. at 16-18). If Mon Valley desired to assert these allegations, it was required to do so in its pleading, not its brief in opposition to a motion to dismiss. See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007); Commw. of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

6

We likewise reject Giant Eagle's contention that the issue we resolved was that Mon Valley's extension notice was untimely. We did not resolve that issue—it was admitted by Mon Valley. What we *did* determine in our November 6, 2018 opinion was that Mon Valley's allegations failed to establish a right or obligation violated by Giant Eagle's notice of termination of the Fisher Heights sublease. We thus held that because Mon Valley had not identified any violation of the terms of the sublease agreement, it had failed to state a claim for breach of contract under Pennsylvania law.

In the state-court action, Mon Valley is seeking, *inter alia*, a declaration that its January 31, 2018 notice to extend the term of the sublease was "timely and effective" under the language of the sublease and overlease, and, therefore, Giant Eagle's "attempts to terminate the Sublease are improper." (See Doc. 151-4 ¶ 66). Mon Valley appears to be raising—through a different cause of action—an issue identical to that presented to this court: the effect of its January 31, 2018 notice to extend the Fisher Heights sublease and the concomitant propriety of Giant Eagle's termination notice. That issue was actually litigated and essential to our judgment that Mon Valley had failed to state a claim for breach of contract in relation to the Fisher Heights sublease.

We are cognizant that some of the allegations and contract-interpretation arguments in Mon Valley's proposed state-court complaint are quite different than those presented to this court. (Compare Doc. 151-4 ¶¶ 9-65, with Doc. 79 ¶¶ 609-17). However, Mon Valley's claim that it is raising a different *issue* at the state level is belied by its own proposed pleading. Giant Eagle's notice of termination of the

Fisher Heights sublease could only be "improper" if such conduct was a breach of contract because Mon Valley's renewal notice had effectively extended the sublease. Count I of the proposed state-court complaint is, quite simply, the declaratory judgment corollary to Mon Valley's federal breach of contract claim, albeit with novel and contradictory allegations.[1] In sum, Mon Valley appears to desire to relitigate the same issue—the effect of its January 31, 2018 extension notice and the related propriety of Giant Eagle's notice of termination—but under completely different factual allegations.

Mon Valley maintains that the "one issue" we resolved was that it had "made a judicial admission regarding its sublease option" notice being untimely. (Doc. 151 at 4, 11-12). According to Mon Valley, the state court will apply a different legal standard to this judicial admission and therefore the issue before the state court is necessarily distinct. Mon Valley is mistaken. As explained above, the issue we resolved was whether Mon Valley had stated a claim for breach of contract concerning Giant Eagle's conduct in relation to the Fisher Heights sublease. In reaching our conclusion, we of course considered as true Mon Valley's factual averments that its notice was untimely, as we must. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). But we applied the same legal standard to the issue of whether Giant Eagle's notice of termination of the sublease was "improper"

---

[1] (See, e.g., Doc. 79 Counts I, III, XIV, XV, XVIII, XIX (seeking declaratory relief on nearly identical grounds as breach of contract claims)).

as the state court will be required to apply: breach of contract under Pennsylvania law.

We also reject Mon Valley's argument that our dismissal of Count XXII was not sufficiently "final" for purposes of the relitigation exception. We agree that the dismissal was not an immediately appealable order because it was interlocutory. See FED. R. CIV. P. 54(a), (b). But "final" for issue preclusion is not the same as for purposes of appeal. Unlike in the context of claim preclusion, "the effectiveness of issue preclusion . . . does not require the entry of a judgment, final in the sense of being appealable." Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 210 (3d Cir. 2001) (quoting *In re* Brown, 951 F.2d 564, 569 (3d Cir. 1991)). For issue preclusion, "finality" may "mean little more than that the litigation of a particular issue has reached a stage that a court sees no really good reason for permitting it to be litigated again." Free Speech Coal., Inc. v. Att'y Gen. of U.S., 677 F.3d 519, 541 (3d Cir. 2012) (citation omitted). Our determination on whether Giant Eagle's notice of termination was improper under the sublease agreement was "sufficiently firm to be accorded preclusive effect." See id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (AM. LAW INST. 1982)). Because the same parties and same issue are present, Giant Eagle may assert the relitigation exception to seek an injunction of the state-court litigation of this issue.

**B.     Giant Eagle Has Not Demonstrated Irreparable Harm**

Nevertheless, "the fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue." Chick Kam Choo, 486 U.S. at 151. Under principles of comity and federalism that restrain federal injunctions of state

9

proceedings, the party seeking to enjoin state-court litigation must demonstrate that it has suffered or will suffer irreparable harm if denied equitable relief. In re Davis, 691 F.2d 176, 178 (3d Cir. 1982) (quoting Mitchum v. Foster, 407 U.S. 225, 243 (1972)).

Giant Eagle contends that it will suffer irreparable harm by having to "expend time and resources relitigating issues in state court." (Doc. 137 at 5). We disagree that such expenditures constitute irreparable harm. "[T]he cost, anxiety, and inconvenience" of being required to defend in state court does not rise to the level of irreparable injury. In re Davis, 691 F.2d at 178. Furthermore, Giant Eagle will be free to assert the affirmative defense of issue preclusion in the state-court proceeding, so it is not without an available legal remedy. See id. We find that Giant Eagle has not sufficiently demonstrated the type of harm necessary to authorize the use of "heavy artillery." Hence, we decline to enjoin the state court proceedings under the relitigation exception of the Anti-Injunction Act.

## IV. Conclusion

The court will deny Giant Eagle's motion (Doc. 137) to enjoin state court litigation. Giant Eagle has failed to establish the type of irreparable harm required for the extraordinary relief it seeks. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: February 28, 2019