## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEVEN Z ENTERPRISES, INC., *et al.*, | : : : | CIVIL ACTION NO. 2:17-CV-740 |
| Plaintiffs | : : | (Chief Judge Conner) |
| v. | : : | |
| GIANT EAGLE, INC., | : : | |
| Defendant | : | |

### MEMORANDUM

This case primarily involves contractual disputes between a group of independent supermarket owners and the corporation with whom they are affiliated. Earlier this year, defendant Giant Eagle, Inc. ("Giant Eagle") filed an answer to plaintiffs' first supplemental complaint. That answer included a counterclaim against plaintiff Mon Valley Foods, Inc. ("Mon Valley"). Giant Eagle supplemented its single counterclaim with four counterclaims, and now moves for judgment on the pleadings as to those counts. (See Doc. 179). We will grant in part and deny in part Giant Eagle's motion.

## I.    Factual Background & Procedural History

A thorough recitation of the background and numerous claims in this case appears in our November 6, 2018 memorandum addressing Giant Eagle's motions to dismiss, familiarity with which is presumed. (See Doc. 118 at 1-5). The instant motion for partial judgment on the pleadings involves Giant Eagle's counterclaims set forth in Counts 7 through 10. (See Doc. 150 ¶¶ 166-208).

Mon Valley currently operates three Giant Eagle supermarkets: the "Fisher Heights," "Finleyville," and "Uniontown" stores.[1] (See Doc. 79 ¶ 31; Doc. 150 ¶¶ 129, 130(a), 131(a); Doc. 161 ¶¶ 129, 130(a), 131(a)). Mon Valley and Giant Eagle executed "Retailer's Agreements" for these stores, which generally govern the licensing and business relationship between the parties. (Doc. 128 ¶ 13(a); Doc. 151 ¶¶ 130(a), 131(a); Doc. 161 ¶¶ 13(a), 130(a), 131(a)). Undisputed copies of the Retailer's Agreements have been attached to the pleadings. (Doc. 79-5 (Fisher Heights and Finleyville Retailer's Agreement); Doc. 150-2 (Uniontown Retailer's Agreement)). Additionally, Mon Valley and Giant Eagle have separate sublease contracts for each store. (See Doc. 128 ¶ 13(b); Doc. 151 ¶¶ 130(b), 131(b); Doc. 161 ¶¶ 13(b), 130(b), 131(b)). The parties have also provided these sublease contracts. (Doc. 79-36 (Fisher Heights sublease); Doc. 150-1 (Finleyville sublease); Doc. 150-3 at 2-14, 60-61 (Uniontown sublease)).

This is not the first time we have addressed Mon Valley's various contracts with Giant Eagle. We previously dismissed, under Federal Rule of Civil Procedure 12(b)(6), a breach of contract claim asserted by Mon Valley regarding the Fisher Height's sublease and Giant Eagle's notice of termination thereof. (See Doc. 118 at 15-16 & n.7). We revisited that dismissal several months later when we denied Giant Eagle's motion to enjoin state-court litigation. (See generally Doc. 154). Specifically, we determined that Mon Valley was attempting to relitigate, in state court, "the effect of [Mon Valley's] January 31, 2018 notice to extend the Fisher

---

[1] It appears that a fourth store, Mon Valley's "Charleroi" Giant Eagle, is no longer in operation. (See Doc. 79 ¶¶ 30-31; Doc. 79-5 at 1).

Heights sublease and the concomitant propriety of Giant Eagle's termination notice" of that sublease. (<u>Id.</u> at 7-8). Nevertheless, we denied Giant Eagle's motion to enjoin the state-court proceedings because Giant Eagle had not demonstrated that it would suffer irreparable harm if denied the "heavy artillery" of a federal injunction. (<u>Id.</u> at 9-10 (quoting <u>Smith v. Bayer Corp.</u>, 564 U.S. 299, 307 (2011))).

Giant Eagle now moves for judgment on the pleadings on counterclaims involving its agreements with Mon Valley. Giant Eagle seeks specific performance as well as declaratory and injunctive relief. The motion is fully briefed and ripe for disposition.

## II.     <u>Legal Standard</u>

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. <u>Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.</u>, 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007). Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). To succeed on a Rule 12(c) motion, the movant must clearly establish that no material issue of fact remains to be resolved and that the movant "is entitled to judgment as a matter of law." <u>Sikirica v. Nationwide Ins. Co.</u>, 416 F.3d 214, 220 (3d Cir. 2005); <u>see</u> 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2015). A Rule 12(c) motion for judgment on the pleadings is decided under a standard similar to a Rule 12(b)(6) motion to dismiss. See <u>Zimmerman v. Corbett</u>, 873 F.3d 414, 417 (3d Cir. 2017). That is, judgment on the pleadings should be granted only when, accepting as true the facts

alleged by the nonmovant and drawing "all reasonable inferences" in that party's favor, the movant is entitled to judgment as a matter of law. See id. (citation omitted).

## III.   Discussion

At the outset, we observe that the bulk of Giant Eagle's counterclaims against Mon Valley contain no material factual disputes. The "new facts" and different "factual allegations" referenced by Mon Valley, (see Doc. 236 at 2, 4-6), are either undisputed by Giant Eagle or simply constitute legal argument. Accordingly, the only remaining question is whether, under the facts as alleged by Mon Valley, Giant Eagle is entitled to judgment as a matter of law.

### A.   Mon Valley's Shifting Contractual Arguments

As a threshold matter, we note that Mon Valley's position regarding the Fisher Heights sublease and extension thereof is a moving target. In its first supplemental complaint, Mon Valley explicitly alleged that the initial term of the sublease ran concurrently with the term of the overlease,[2] and the overlease's initial term expired on December 31, 2018. (See Doc. 79 ¶¶ 612-13). Under the plain language of the sublease, Mon Valley's notice to exercise the extension option was due no later than 12 months before the end of the then-current lease term, *i.e.*, by December 31, 2017. (See id. ¶¶ 613-14; Doc. 98 at 16; Doc. 118 at 15-16). According to Mon Valley, Giant Eagle's notice declaring that the sublease would terminate as

---

[2] The Fisher Heights "overlease" is the lease between the original "Landlord" and lessors, Joan and Aldo Bartolotta (the "Bartolottas"), and the original "Tenant" and lessee, Giant Eagle. (See Doc. 79-47 at 1, 2, 4).

of December 31, 2018—provided a month after the deadline to extend the sublease came and went without action by Mon Valley—was a retaliatory "tactic to intimidate and pressure Mon Valley to drop [the instant] litigation" rather than "for any legitimate business purpose." (Doc. 79 ¶¶ 288-99, 615-16).

Giant Eagle responded, in its Rule 12(b)(6) motion, that it was well within its contractual rights to provide notice of termination based on Mon Valley's failure to timely extend the sublease. Thereafter, Mon Valley's position abruptly changed course. In its responsive briefing, Mon Valley asserted that the "Agreement Setting Lease Term" (Doc. 79-48) clarifying the term of the overlease did not set the initial sublease term; it contended that the initial sublease term actually ended on December 31, 2017. (See Doc. 98 at 15-18; Doc. 154 at 6). Mon Valley's notice to extend the sublease, therefore, was due no later than December 31, 2016, and Giant Eagle had implicitly "waived the enforceability of the timeliness requirement under the Sublease" by taking no action until 2018. (See Doc. 154 at 6 (quoting Doc. 98 at 18)). We rejected this argument because it contradicted Mon Valley's pleadings. (See Doc. 118 at 16 n.7 (explaining that a party cannot amend its pleadings through an opposition brief (citing Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007); Commonwealth of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988))))).

Mon Valley pivots yet again in its answer to Giant Eagle's counterclaims. Mon Valley abandons its prior theories and raises three new arguments as to why its extension notice was timely and effective and Giant Eagle's notice of termination was improper. Putting aside concerns that Mon Valley's vacillating position

implicates judicial estoppel,[3] we will explain why Mon Valley's newest arguments are unpersuasive.

### 1. *Paragraph 46.2 of the Overlease*

Mon Valley claims that Giant Eagle was contractually obligated to (1) provide notice of Mon Valley's failure to timely exercise its extension option for the sublease, and (2) permit Mon Valley 30 days in which to exercise that option prior to declaring the sublease terminated ("notice and grace period"). For this proposition, Mon Valley primarily relies on paragraph 46.2 of the Fisher Heights overlease between the Bartolottas and Giant Eagle. That paragraph states:

> Notwithstanding the foregoing [lease renewal options provided in paragraph 46.1], if Tenant does not notify Landlord of the exercise of any renewal option hereunder prior to the notice date set forth herein, Tenant's option to renew shall nevertheless remain in full force and effect for a period of thirty (30) days after Tenant's receipt of notice from Landlord setting forth the expiration date of the Lease and advising Tenant that notice of renewal has not been received. Landlord shall be obligated to provide such a notice to Tenant prior to leasing the Premises to another tenant or declaring that the Term has ended.

(Doc. 79-47 ¶ 46.2).

Mon Valley's argument goes like this. Paragraph 46.2 of the Fisher Heights overlease requires the Bartolottas to provide notice to Giant Eagle regarding Giant

---

[3] Judicial estoppel prevents litigants from taking a position "inconsistent" with one that they asserted previously in the same or in an earlier proceeding. Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 272 (3d Cir. 2012) (citations omitted). The doctrine is intended to "protect the integrity of the judicial process and to prohibit parties from deliberately changing positions according to the exigencies of the moment." Id.

Eagle's failure to timely exercise the lease-extension option and to give it 30 days to exercise that option before declaring the overlease terminated. The Fisher Heights sublease identifies the overlease in the preamble "as attached hereto as Exhibit A and made a part hereof," (see Doc. 79-36 at 1), and also incorporates the term provided in paragraph 1.12 of the overlease so the contracts run concurrently, (id. ¶ 2). Paragraph 1.12 of the overlease, in turn, sets an initial 20-year term and states that the term "shall continue for any extensions thereof pursuant to Section 46 hereof[.]" (Doc. 79-47 ¶ 1.12). Mon Valley contends that the notice and grace period set out in paragraph 46.2 of the overlease is incorporated into the sublease and applies equally to Giant Eagle (sublessor) and Mon Valley (sublessee). Giant Eagle never provided such notice and opportunity to cure, and Mon Valley informed Giant Eagle in January 2018 that it was exercising its renewal option. According to Mon Valley, its extension notice was thus effective and Giant Eagle "cannot declare that the [sub]lease term expired on December 31, 2018." (See Doc. 236 at 4-5).

Well-settled contract interpretation principles doom Mon Valley's argument.[4] The fact that the overlease is attached to and made a part of the sublease does not mean that the sublease incorporates all rights and obligations in the overlease and

---

[4] "A lease is a contract and is to be interpreted according to contract principles." Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986) (citation omitted).

applies them to the respective parties to the sublease.[5]  Simply because the sublease refers at times to the overlease and made the overlease a part of the sublease does not render the express terms of the sublease nugatory or overridden.  They are two distinct contracts between different entities.  If Giant Eagle and Mon Valley intended to incorporate the overlease's notice and grace period into the sublease, they easily could have done so through incorporation by reference or by adding a similarly worded provision.  But they did not.  The sublease instead contains its own extension option and notice provision, (see Doc. 79-36 ¶ 2), which controls the rights and obligations of the parties with respect to extending the sublease.

Nor does the sublease's mere reference to paragraph 1.12 of the overlease, which in turn mentions "Section 46" of the overlease, graft the notice and grace period from the overlease into the sublease.  That is a tortured reading of the contracts at issue.  Paragraph 2 of the sublease merely states, in relevant part, that "[t]he *initial* term of this Sublease shall be equivalent to the Term described in Section 1.12 of the Overlease."  (Doc. 79-36 ¶ 2 (emphasis added)).  This sentence is not ambiguous.  It means what it says: the initial term of the sublease will be the same as that of the overlease, *i.e.*, 20 years and running concurrently with the

---

[5] In fact, paragraph 5 of the sublease, conspicuously titled "OVERLEASE," expressly prohibits that from happening.  (See Doc. 79-36 ¶ 5).  This paragraph states, in pertinent part, that "Sublessor [Giant Eagle] *shall have no duty to perform any obligations* of the Overlandlord [the Bartolottas] . . . ."  (Id. (emphasis added)).  This provision enfeebles Mon Valley's argument the Giant Eagle was obligated to provide Mon Valley with the same notice and grace period that the overlease required the Bartolottas to extend to Giant Eagle.  Absent some provision in the sublease saddling Giant Eagle with a similar notice-and-grace-period obligation, paragraph 5 of the sublease inhibits any duty of the Bartolottas from being inferentially imposed on Giant Eagle.

overlease. Paragraph 2 of the sublease provides its own specific extension procedure, which differs from the extension procedure described in the overlease. (<u>Compare</u> Doc. 79-36 ¶ 2, <u>with</u> Doc. 79-47 ¶ 46). Mon Valley's proposed interpretation would render most of the language in paragraph 2 of the sublease surplusage, which Pennsylvania law counsels against. <u>See</u> <u>Commonwealth of Pa.</u> <u>ex rel.</u> <u>Kane v. UMPC</u>, 129 A.3d 441, 464 (Pa. 2015) (citing <u>Murphy v. Duquesne</u> <u>Univ. of the Holy Ghost</u>, 777 A.2d 418, 429 (Pa. 2001)). We find that there is no contractual basis to obligate Giant Eagle to extend the overlease's notice and grace period to sublessee Mon Valley.

### 2. *Course of Conduct*

Giant Eagle provided written notice to Mon Valley of the right to extend the Uniontown sublease (together with a renewal notice to execute) approximately a month before the deadline for Mon Valley to submit such notice. (<u>See</u> Doc. 150-3 at 3 ¶ 2; Doc. 161 at 2; Doc. 161-1). Mon Valley asserts that because Giant Eagle did not provide similar advance notice for the Fisher Heights store, Giant Eagle cannot declare the Fisher Heights sublease terminated. This argument likewise misses the mark.

As a threshold matter, we do not find any of the Fisher Heights sublease provisions at issue to be ambiguous. And when a contract is unambiguous, the writing itself controls. <u>Murphy</u>, 777 A.2d at 429; <u>Hutchison</u>, 519 A.2d at 390. Even assuming, *arguendo*, that course of conduct is relevant or necessary to ascertain the meaning of the sublease, that Giant Eagle provided advance notice on a single occasion regarding extension of a different sublease is not the kind of evidence that

would establish a "course of conduct" by Giant Eagle.  See, e.g., RESTATEMENT

(SECOND) OF CONTRACTS § 202 cmt. g (AM. LAW INST. 1981) (explaining that course-

of-performance interpretation aid "does not apply to action on a single occasion").

Moreover, the Uniontown sublease and overlease are drastically different

than the Fisher Heights contracts with regard to extension.  The Uniontown

sublease automatically *renews*, rather than terminates, in the absence of effective

notice.  (See Doc. 150-3 at 3 ¶ 2).  The Uniontown overlease does not contain the

notice-and-grace-period provision that appears in paragraph 46.2 of the Fisher

Heights overlease.  (See generally Doc. 150-3 at 15-61).  We reject Mon Valley's

contention that the single instance of advance notice given regarding extension of

the Uniontown sublease—a different lease with dissimilar renewal procedures—

somehow requires Giant Eagle to provide Mon Valley with advance notice or

curative opportunities that do not appear in the Fisher Heights sublease.

### 3.      *Implicit Acceptance of Extension Notice by Conduct*

Mon Valley lastly asserts that because Giant Eagle has continued to accept

rent and otherwise "operate as though Mon Valley is lawfully entitled to possession

of the Fisher Heights store," there is a "genuine issue" regarding whether Giant

Eagle, by its actions, implicitly accepted renewal of the Fisher Heights sublease.

(See Doc. 236 at 12).  Mon Valley appears to be arguing that Giant Eagle, through its

conduct, waived its extension-notice rights under the sublease.  This argument also

fails.

Waiver may be implied by a party's unequivocal conduct demonstrating an

intent to relinquish a known right.  Brown v. City of Pittsburgh, 186 A.2d 399, 401

(Pa. 1962); Camp Ne'er Too Late, LP v. Swepi, LP, 185 F. Supp. 3d 517, 550 (M.D. Pa. 2016) (citing Brown, 186 A.2d at 401). But Giant Eagle has repeatedly demonstrated its intent to *enforce*, not relinquish, its extension-notice rights under the sublease. Giant Eagle issued a notice of termination of the Fisher Heights sublease in January 2018, explaining that the sublease would terminate at the end of that year because Mon Valley had not timely exercised the extension option. (See Doc. 79-37; Doc. 128 ¶ 14; Doc. 161 ¶ 14). Giant Eagle maintained this position in its correspondence with Mon Valley throughout 2018. (See Doc. 128 ¶¶ 22, 26, 27; Doc. 128-3 at 2-3; Doc. 161 ¶¶ 22, 26, 27). Mon Valley itself acknowledges that Giant Eagle "has adhered to its threat of termination" of the Fisher Heights sublease and has consistently "maintained its position" up through the filing of the first supplemental complaint. (Doc. 79 ¶¶ 296, 298). In no way could Giant Eagle's actions indicate that it intended to relinquish its extension-notice rights under the sublease.

The court rejects Mon Valley's argument that Giant Eagle's acceptance of rent payments and provision of inventory demonstrate a contrary intent. That Giant Eagle has continued its working relationship with Mon Valley while seeking judicial resolution of the instant contract disputes does not imply that Giant Eagle has waived its rights or accepted Mon Valley's untimely notice. If anything, these actions demonstrate a prudent and civil approach by Giant Eagle to enforce its rights with the least amount of disruption to Mon Valley's businesses. Punishing such conduct by labeling it "implied waiver" would have the perverse effect of encouraging more hostile and contentious business relationships, less cooperation

between litigants, and abandonment of orderly judicial resolutions in favor of eviction proceedings.

In sum, we find none of Mon Valley's newest contract-interpretation arguments to be persuasive. The contract provisions at issue are unambiguous, and their plain language controls. We turn to Giant Eagle's supplemental counterclaims based on those agreements.

## B. Giant Eagle's Counterclaims

Giant Eagle asserts four supplemental counterclaims against Mon Valley. Count 7 asserts a claim for breach of the Fisher Heights sublease. Count 8 seeks a declaratory judgment that the Fisher Heights and Finleyville Retailer's Agreement is terminated. In Count 9, Giant Eagle requests a declaration that the Finleyville sublease, Uniontown Retailer's Agreement, and Uniontown sublease are also terminated. Count 10 pleads an action for permanent injunction under the Lanham Act.

### 1. *Counterclaim Count 7 – Breach of Fisher Heights Sublease*

We need not repeat our prior discussion of the Fisher Heights sublease. After disposing of Mon Valley's numerous arguments to the contrary, we rely on the unambiguous language of the agreements at issue to establish the following.

The initial term of the Fisher Heights sublease was intended to coincide with the term of the overlease. (See Doc. 79-36 ¶ 2). The overlease describes the lease term as 20 years. (Doc. 79-47 ¶ 1.12). The parties to the overlease—the Bartolottas and Giant Eagle—executed an "Agreement Setting Lease Term" approximately two years after signing the overlease, clarifying that the overlease would run from

January 13, 1998, to December 31, 2018. (See Doc. 79-48). Based upon the plain language of the sublease, the initial term of the sublease likewise ran from January 13, 1998, to December 31, 2018.[6] (See Doc. 79-36 ¶ 2; Doc. 79-47 ¶ 1.12; Doc. 79-48).

The sublease could be extended twice following the initial 20-year term: a five-year extension and then a four-year extension. (Doc. 79-36 ¶ 2). To secure an extension, Mon Valley was required to "give[] written notice to [Giant Eagle] . . . of its intention to extend the term of the Sublease *no later than twelve (12) months prior to the end of the then current period, time being of the essence*." (Id. (emphasis added)). Here, the "then current period" refers to the initial 20-year term running from 1998 to 2018 because the sublease had not yet been renewed. Thus, Mon Valley was required to give notice of its intention to extend the sublease no later than December 31, 2017. (See id.) If Giant Eagle did not receive Mon Valley's notice of intention to extend the sublease by December 31, 2017, paragraph 2 states that the sublease "*shall terminate* at the end of the then current term," *i.e.*, on December 31, 2018. (Id. (emphasis added); see also Doc. 118 at 15-16; Doc. 154 at 2-3, 6-8).

---

[6] We reject Mon Valley's assertion, detailed in its state-court complaint and referenced in its answer, that the "Agreement Setting Lease Term" should not set the initial term of the sublease because it was executed by the Bartolottas and Giant Eagle, not Mon Valley. (See Doc. 161 ¶¶ 154, 157-58, 160, 163; Doc. 161-3 ¶¶ 35-39, 43-48). Mon Valley posits that this modification was signed two years after the sublease and overlease, did not include Mon Valley as a signatory, and was never provided to Mon Valley. Hence, Mon Valley did not receive timely notice of the clarified overlease term. This argument might carry weight but for the fact that the Bartolotta family owns and operates Mon Valley, so Mon Valley necessarily had knowledge of the Agreement Setting Lease Term. (See Doc. 79 ¶¶ 29, 52; Doc. 79-36 at 12; Doc. 236 at 11-12 & n.7).

It is undisputed that Mon Valley provided its extension notice on January 31, 2018. The contracts at issue, however, required extension notice by December 31, 2017. Hence, by operation of paragraph 2, the sublease terminated on December 31, 2018—the end of the then-current term.

If Giant Eagle were so inclined, it could waive enforcement of this extension-notice provision. But the record reflects that Giant Eagle is most assuredly *not* so inclined, and has neither explicitly nor implicitly waived its right to demand strict compliance with paragraph 2 of the sublease. Hence, Mon Valley is contractually bound to the agreement it signed, and the terms of that agreement plainly indicate that the sublease terminated on December 31, 2018.

As for breach of the Fisher Heights sublease, the only provision that Mon Valley appears to have violated is paragraph 23, "OPTION TO PURCHASE." (See Doc. 79-36 ¶ 23). That section provides that if the sublease "expires or terminates for any reason," Giant Eagle has the option to purchase the store's operational assets at fair market value as determined by an independent appraiser. (Id.) The sublease expired on December 31, 2018, and Mon Valley admits that it has not cooperated with Giant Eagle to select an independent appraiser or to sell the store's assets as required by paragraph 23.[7] (See Doc. 150 ¶¶ 136-38; Doc. 161 ¶¶ 136-38).

---

[7] Paragraph 23 of the sublease does not provide a specific timeline for the option-to-purchase process. When a contract is silent as to time for performance, "the law implies that it shall be done within a reasonable time." Field v. Golden Triangle Broad., Inc., 305 A.2d 689 (Pa. 1973) (citations omitted)); Hodges v. Pa. Millers Mut. Ins. Co., 673 A.2d 973, 974-75 (Pa. Super. Ct. 1996) (same) (citing RESTATEMENT (SECOND) OF CONTRACTS § 204). Mon Valley has had nearly a year to comply with Giant Eagle's requests, which is a reasonable amount of time under the circumstances.

This failure is a default of the sublease under subparagraph (viii) of paragraph 7, which states that Mon Valley is in default if it "fails to perform any of its other obligations under this Sublease and such failure continues for thirty (30) days after receipt by [Mon Valley] of notice of default with respect to such failure." (<u>See</u> Doc. 79-36 ¶ 7(viii)). Giant Eagle provided the requisite notice of default to Mon Valley on January 10, 2019, and Mon Valley's nonperformance continued for 30 days after receipt thereof. (<u>See</u> Doc. 150 ¶¶ 135-38, 147; Doc. 161 ¶¶ 135-38, 147; Doc. 150-4). Consequently, Giant Eagle is entitled to judgment as a matter of law on its breach of contract claim concerning the Fisher Heights sublease, specifically breach of the obligations provided in paragraph 23.

Giant Eagle requests specific performance as relief. Specific performance is appropriate only when the facts unequivocally establish that the party seeking this equitable remedy has a right to it, "no adequate remedy at law exists," and "justice requires it." <u>Clark v. Pa. State Police</u>, 436 A.2d 1383, 1385 (Pa. 1981) (citations omitted). Specific performance is a unique remedy that may be proper when money damages cannot be accurately calculated or ascertained. <u>Id.</u> (citations omitted). Mon Valley offers no response to Giant Eagle's demand for specific performance, steadfastly maintaining that no breach occurred.

Giant Eagle asks the court to order Mon Valley to "vacate the store, cease using Giant Eagle's trademarks, cease operating as a Giant Eagle, honor Giant Eagle's Option to Purchase, and allow for the orderly transition of the store and store operations to Giant Eagle." (Doc. 181 at 9-10). The problem with these comprehensive demands for relief is that the only conclusive sublease breach at this

procedural juncture is Mon Valley's failure to comply with the option to purchase. The additional performances Giant Eagle seeks may flow from other contracts or legal claims, but they do not fall within the ambit of the instant breach of the Fisher Heights sublease.

We conclude that specific performance is appropriate only insofar as Mon Valley must perform in accordance with the option to purchase as set forth in paragraph 23 of the Fisher Heights sublease. The facts unquestionably establish that (1) Giant Eagle has a right to exercise the purchase option after termination of the sublease, and the sublease terminated on December 31, 2018; (2) monetary damages for Mon Valley's nonperformance of its obligations under paragraph 23 are difficult, if not impossible, to measure; and (3) Mon Valley has not shown that providing Giant Eagle with the benefit of its bargain will result in inequity or injustice, particularly when purchase will be governed by independent appraisal and fair market value. See Clark, 436 A.2d at 1385; Getty Realty Corp. v. Hettler, No. 97-5637, 1998 WL 76308, *3-4 (E.D. Pa. Feb. 23, 1998) (ordering specific performance of lease's purchase option).

2. ***Counterclaim Count 8 – Declaratory Judgment (Retailer's Agreement for Fisher Heights and Finleyville Stores)***

Giant Eagle seeks declaratory judgment that the Retailer's Agreement for the Fisher Heights and Finleyville stores (hereinafter "FHF Agreement") is terminated. Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Act strictly

limits the federal courts' authority to matters involving a "case of actual controversy." 28 U.S.C. § 2201(a). The Act does not create substantive rights and is not an independent source of federal jurisdiction, Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950); Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 281 n.4 (3d Cir. 2017), but instead "provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction," Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 394 (3d Cir. 2016).

As grounds for termination, Giant Eagle points to multiple sections of the FHF Agreement that it alleges Mon Valley breached. (See Doc. 150 ¶ 181; Doc. 181 at 14).[8] Yet the only provision that appears applicable to the instant claim for declaratory relief is subparagraph (A)(iii) of paragraph 14. That subparagraph states that it will be a default of the FHF Agreement if Mon Valley is "in default under any lease, *sublease*, mortgage, or other agreement relating to any Supermarket premises . . . or loses the right to possession of any Supermarket . . . for any reason whatsoever[.]" (Doc. 79-5 ¶ 14(A)(iii) (emphasis added)). In essence, subparagraph (A)(iii) is a cross-default provision. Mon Valley concedes as much. (See Doc. 79 ¶ 289). Because we have determined that Mon Valley is in default of the Fisher Heights sublease, it is necessarily in default of the FHF Agreement. (See Doc. 79-5 ¶ 14(A)(iii)). Under subparagraph (B)(i) of paragraph 14, upon occurrence

---

[8] For example, Giant Eagle claims that Mon Valley breached paragraphs 8, 14(A)(viii), and 16 of the FHF Agreement by "misusing" Giant Eagle's trademarks through continued use of the marks after termination of the Fisher Heights sublease. But termination of the FHF Agreement (and the license contained therein) is the *sine qua non* of this alleged breach. Therefore, we reject it as *grounds* for terminating the FHF Agreement.

of any default outlined in section 14(A), Giant Eagle may "terminate this Agreement immediately upon written notice" to Mon Valley.  (Id. ¶ 14(B)(i)).  Giant Eagle provided the requisite termination notice to Mon Valley on January 10, 2019.  (See Doc. 150-4 at 2-3).  We accordingly will grant Giant Eagle's motion on its counterclaim seeking declaratory judgment that the FHF Agreement is terminated.

3.  ***Counterclaim Count 9 – Declaratory Judgment (Finleyville Sublease, Uniontown Retailer's Agreement, Uniontown Sublease)***

Termination of the FHF Agreement gives Giant Eagle broad discretion to terminate all related contracts between the parties.  The FHF Agreement explicitly provides that "[i]f Giant Eagle terminates this Agreement in accordance with subsection (i) above, Giant Eagle may . . . terminate *any other agreement* between Giant Eagle and [Mon Valley] relating to" the Fisher Heights and Finleyville stores, as well as "*all agreements relating to any and all other supermarkets* using the name Giant Eagle that are owned or partially owned or in any way controlled by [Mon Valley] (including, but not limited to, the Uniontown Store)."  (Doc. 79-5 ¶ 14(B)(ii), (iii) (emphasis added)).  Giant Eagle duly exercised its rights under section 14(B) to terminate the Finleyville sublease, Uniontown Retailer's Agreement, and Uniontown sublease on January 10, 2019.  (See Doc. 150-4 at 3).  Consequently, Giant Eagle is entitled to declaratory judgment on Count 9 of its supplemental counterclaims declaring that these three additional contracts are terminated as well.

### 4. *Counterclaim Count 10 – Lanham Act Claim Seeking Permanent Injunction*

Counterclaim Count 10 alleges that Mon Valley is in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.  Giant Eagle contends that Mon Valley only had the right to use Giant Eagle's trademarks pursuant to the licensing provisions in the Retailer's Agreements.  (See Doc. 79-5 ¶ 1; Doc. 150-2 ¶ 1).  According to Giant Eagle, because those agreements have terminated, any further use of Giant Eagle's marks by Mon Valley constitutes trademark infringement barred by the Lanham Act.  Giant Eagle requests that Mon Valley be permanently enjoined from using the Giant Eagle trademark with respect to the Fisher Heights, Finleyville, and Uniontown stores.  Giant Eagle cannot surmount several hurdles for this counterclaim.

To establish a Lanham Act violation under 15 U.S.C. § 1125(a)(1)(A), otherwise known as a "false association" claim, the plaintiff must show that "(1) it has a valid and legally protected mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000); see also Parks LLC v. Tyson Foods, Inc., 863 F.3d 220, 225-26 (3d Cir. 2017) (explaining two types of Lanham Act claims under Section 1125(a)(1)).  Regarding the first two elements, Giant Eagle pleads that it "is the lawful owner of the legally protected trade name and trademark 'Giant Eagle.'"  (Doc. 150 ¶ 201).  Mon Valley denies these allegations, although it does so in a general manner by stating that they are "legal conclusions" rather than facts.  (See Doc. 161 ¶ 201).  We cannot

enter judgment on the pleadings in Giant Eagle's favor when its primary allegations are denied.

As for the third element, we note that numerous courts have found that use of licensed marks after the relevant license has expired will inescapably create confusion or mistake, implicating liability for "false association" under Section 1125(a)(1)(A). See Days Inn Worldwide, Inc. v. BFC Mgmt., Inc., 544 F. Supp. 2d 401, 405 (D.N.J. 2008) (citing U.S. Jaycees v. Phila. Jaycees, 639 F.2d 134, 142 (3d Cir. 1981); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990); S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992)); Burger King Corp. v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983) (listing cases); PGA of Am. v. Bankers Life & Cas. Co., 514 F.2d 665, 670 (5th Cir. 1975); Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc., 88 F. Supp. 2d 914, 922-23 (C.D. Ill. 2000). Indeed, "likelihood of confusion is inevitable" when the same marks are used simultaneously by unrelated entities. Opticians Ass'n of Am., 920 F.2d at 195. Mon Valley's only response is that its Retailer's Agreements have not terminated, so its license to use the Giant Eagle marks has not terminated. Based upon the court's decision in this memorandum, Mon Valley is now incorrect on both accounts. See supra Section III(B)(1)-(3). Nevertheless, the first two elements of this claim are disputed, and, therefore, judgment on the pleadings must be denied.

Even if Giant Eagle had established a Lanham Act violation, its requested remedy is fatally undeveloped. Giant Eagle asks that we permanently enjoin Mon Valley from using Giant Eagle's marks going forward. The Lanham Act specifically provides for injunctive relief. See 15 U.S.C. § 1116(a). However, a permanent

injunction may only issue when the party seeking injunctive relief has established (1) irreparable injury; (2) inadequacy of other remedies at law, like money damages, to compensate that injury; (3) that the balancing of the equities between the parties favors injunctive relief; and (4) that "the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (citation omitted); see Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 216 (3d Cir. 2014) (holding that there is no presumption of irreparable injury in Lanham Act cases). Giant Eagle has not substantively analyzed any of these factors as they relate to its request for injunctive relief, (see Doc. 181 at 16-17), and its pleading provides only conclusory statements, (Doc. 150 ¶¶ 201-08). Accordingly, Giant Eagle has not demonstrated a right to the extraordinary relief of a permanent injunction.[9]

### C. Holdover Tenancy

The parties raise one tangential issue that requires our attention. Mon Valley asserts that because both parties continue to operate under the subleases at issue, Mon Valley is a "holdover tenant" and is entitled to a year-to-year tenancy because the initial sublease terms were 20 years in length. (See Doc. 236 at 14-15). Giant Eagle counters that, at most, Mon Valley is a month-to-month holdover tenant. The uncontroverted facts show that Giant Eagle, while admittedly accepting monthly rental payments from Mon Valley, has unequivocally demonstrated contrary intent

---

[9] We also decline Giant Eagle's request for attorney's fees under 15 U.S.C. § 1117(a). Giant Eagle has not yet established a violation under Section 1125(a). See 15 U.S.C. § 1117(a).

to Mon Valley's attempt to remain in possession of the premises. Under Pennsylvania law, no year-to-year holdover tenancy was created; Mon Valley is a holdover tenant on a month-to-month basis only. See Clairton Corp. v. Geo-Con, Inc., 635 A.2d 1058, 1059-61 (Pa. Super. Ct. 1993); Routman v. Bohm, 168 A.2d 612, 613-14 (Pa. Super. Ct. 1961) (citations omitted).

**IV.    Conclusion**

For the reasons set forth, we are compelled to grant judgment on the pleadings in Giant Eagle's favor on several of its counterclaims against Mon Valley. An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:    December 23, 2019