IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Z VIEW ENTERPRISES, LLC, *et. al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 17-740 |
| v. ) | |
| ) | Judge Cathy Bissoon |
| GIANT EAGLE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**I.   MEMORANDUM**

For the reasons that follow, Giant Eagle's Motion for Summary Judgment on Plaintiffs' Claims (Doc. 562) will be granted in part and denied in part, and Giant Eagle's Motion for Summary Judgment on its Counterclaims (Doc. 564) as well as Plaintiffs' Motion for Partial Summary Judgment (Doc. 570) will be denied.[1]

**A.     Giant Eagle's Motion for Summary Judgment on Plaintiffs' Claims**

Giant Eagle is entitled to summary judgment on Plaintiffs' breach of contract claim because the record reflects that it did not breach the 2004 Memo.  *See* Giant Eagle's Br. (Doc.

---

[1] The Court's determinations are based on record evidence that is either undisputed as indicated by the parties, or not fairly disputed on the record.  Disputed facts are viewed in the light most favorable to the nonmoving party in accordance with Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  But the Court agrees with Giant Eagle that Plaintiffs' self-serving deposition testimony is not sufficient to create a dispute of material fact.  *See* Thomas v. Delaware State Univ., 626 Fed. App'x. 384, 389 n.6 (3d Cir. 2015) ("[Plaintiff's] unsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment.").  And that unsworn reports by Plaintiffs' experts are "not competent to be considered on a motion for summary judgment."  Fowle v. C&C Cola, 868 F.2d 59, 67 (3d Cir. 1989).

563) at 2–3 & 5–6 (citing record evidence establishing that the 2004 Memo contemplated changes in the expense sharing formula; that the formula did change in 2005 and in 2006; that Plaintiffs knew as far back as 2006 that they were paying above the 2004 Memo's 1% cap; and that the parties—through their course of performance—from 2006 onwards adhered to the expense sharing formula outlined in the 2006 Memo, not the 2004 Memo).  Plaintiffs' counter, that the fuel programs were not authorized under the Retailer Agreements, Pls.' Opp'n Br. (Doc. 582) at 3–5 & 15–16, is untenable because it attempts to resuscitate an already dismissed claim. *See* MTD Op. (Doc. 118) at 10 (explaining that Plaintiffs' claim that Giant Eagle forced them "to participate in and subsidize programs that were not part of the Agreements" was "insufficient as a matter of law.").  To be sure, the breach of contract claim that proceeded to discovery was based on Giant Eagle's failure "to comply with the terms of the 2004 Memorandum by charging [P]laintiffs above the 1% ceiling and [by] wrongfully taking such excess funds from [P]laintiffs' accounts." *Id.* at 8–9.

Tangentially, Plaintiffs' unfair competition claim—premised on grievances related to the fuel programs—does not survive summary judgment either.  Plaintiffs' contention that this claim is not barred by the gist of the action doctrine because their "grievances extend beyond the parties' agreement[,]" Pls.' Opp'n Br. at 21, is belied by their failure to address the parties' contractual obligations demonstrating otherwise. *See* Giant Eagle's Br. at 18 n.21 (listing specific contractual provisions implicated by the unfair competition claim).

Implicitly, summary judgment also is warranted on Plaintiffs' promissory estoppel and unjust enrichment claims—which are based on the 2004 Memo's 1% cap, but were pleaded in the alternative.  *See* Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory

2

estoppel claim is unwarranted."); Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985) (explaining that an unjust enrichment claim is unavailable "when the relationship between the parties is founded on a written agreement or express contract.").

Plaintiffs' Lanham Act claim for false advertising does not fare any better. Because the underlying claim is not that the advertising was false but that it was misleading, *see* Pls.' Opp'n Br. at 17 ("Giant Eagle's advertisements contain misleading statements regarding offerings at Plaintiffs' stores."), Plaintiffs "must prove the public was actually misled or confused by it." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 n.8 (3d Cir. 1994); *see* Sandoz Pharms. Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 228–29 (3d Cir. 1990) (explaining that "where the advertisements are not literally false," relief cannot be obtained "by arguing how consumers could react; [a Lanham Act plaintiff] must show how consumers actually do react.") But Plaintiffs have failed to adduce any competent evidence of actual confusion. *See* Giant Eagle's Reply Br. (Doc. 589) at 4 (noting that Plaintiffs' testimony about consumer perceptions was speculative, did not show that anyone was misled and/or constituted inadmissible hearsay); Giant Eagle's Resp. to Pls.' Counterstatement (Doc. 591) ¶¶ 281, 282, 287 & 288 (same).

And, because "[t]he elements required to prove unfair competition through false advertising under Pennsylvania common law are parallel to the elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce[,]" Eyenavision, Inc. v. EnChroma, Inc., No. 2:21-CV-00246-RJC, 2022 WL 783428, at *7 (W.D. Pa. Mar. 15, 2022), Plaintiffs' advertising-related unfair competition claim under state law does not survive summary judgment either.

Giant Eagle has not demonstrated entitlement to summary judgment on the Scozio-Plaintiffs' fraud in the inducement claims as to the promise of a third store and the promise of a

fuel station.  In seeking summary judgment on these claims, Giant Eagle relies on an argument that the Court previously had rejected.  *Compare* Giant Eagle's Br. at 23 ("The MSA contains a complete integration clause . . . and it is the best and only evidence of the parties' agreement.") & *id.* at 24 ("[T]he addendum attached to the . . . Agreement does not contain any promise about a fuel station . . . and the Entire Agreement clause precludes reliance on alleged oral statements.") *with* MTD Op. at 22 ("Any alleged representation regarding a third Giant Eagle license implicates different subject matter that would naturally be omitted from, not included in, the store-specific Agreements.").  And the Court will not reconsider that ruling.

But the Scozio-Plaintiffs' fraud in the inducement claims premised on the promise to prevent a competitor store from opening and the promise of a cap on fuel program expenses are barred by the applicable two-year statute of limitations.  *See* Giant Eagle's Br. at 23–24 (citing record evidence reflecting that Mr. Scozio found out in 2006 that a competitor store would be opening and that the Scozio-Plaintiffs knew since 2006/07 that the fuel program expenses exceeded the promised cap).  And Plaintiffs' reliance on the continuing violations doctrine with respect to the claim involving the competitor store, *see* Pls.' Opp'n Br. at 25 (arguing that the doctrine applies because their damages still are continuing as they continue to lose sales to the competitor store), is misplaced.  *See* Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001) ("The focus of the continuing violations doctrine is on affirmative acts of the defendants.").

Giant Eagle has not demonstrated entitlement to summary judgment on the claim regarding Plaintiff Seven Z's extension of the Bridgeville sublease.  *See* Pls.' Opp'n Br. at 29 (explaining that, based on the Fifth Lease Amendment the "New Rent Commencement Date" was the same date as Seven Z's grand opening—*i.e.*, March 7, 1999.)  And although it is a close

4

call but, drawing all reasonable inferences in Seven Z's favor, the Court cannot conclude that the record establishes the commencement date of May 1, 1998.[2]

Summary judgment is warranted on the claim regarding Plaintiff Z Pointe's renewal of the Moraine Point store sublease.  The Court had allowed this claim to proceed to discovery because "Giant Eagle's arguments about verification and proof of receipt [were] misplaced at [the motion to dismiss] stage."  MTD Op. at 15.  But the summary judgment record confirms that Z Pointe cannot prove that it provided timely and proper written notice.[3]  *See* Giant Eagle's Br. at 25–26 (citing record evidence demonstrating that Z Pointe does not have a receipt indicating that the letter was sent or received, and that Z Pointe has no documentation that it sent the letter via any method contemplated by the parties' agreements).  And because Mr. Zupancic admitted that he did not comply with the notice provisions, *see* Giant Eagle's Br. at 26 (quoting deposition testimony), Z Pointe's contention that Mr. Zupancic's testimony raises an issue of credibility that must be resolved by the jury, Pls.' Opp'n Br. at 27, is meritless.

Finally, Plaintiffs Seven Z and Z Pointe's fraudulent nondisclosure and fraudulent misrepresentation claims also do not survive summary judgment.  For these claims to be

---

[2] That Seven Z misquoted part (b) of the definition of the "New Rent Commencement Date," Giant Eagle's Counter Claim Reply Br. (Doc. 590) at 2, does not change the analysis because neither party relies on that provision to get to their preferred date.  And in arguing that Seven Z's analysis is flawed because it "relies solely on sequencing," *id.*, Giant Eagle essentially is asking the Court to flip the summary judgment standard.  The fact remains that Seven Z was not a signatory to the "Amendment to Agreement Setting Lease Term" and the record does not reflect that this amendment was provided to Seven Z.

[3] While Z Pointe's assertion that it timely provided written notice, coupled with documentary evidence of said notice, was sufficient to withstand a motion to dismiss, it cannot rely on the same to defeat summary judgment. *Compare* Pls.' Opp'n Br. at 26 ("Z Pointe sent a letter to Giant Eagle advising it of its intent to renew . . . .  The letter states that it was sent 'VIA CERTIFIED MAIL' to Giant Eagle's address.") *with* MTD Op. at 15 ("Z Pointe maintains that it timely exercised the second option by [sending a] letter . . . .  A copy of this letter is attached . . . and [it] is marked as sent 'VIA CERTIFIED MAIL.'").

submitted to a jury, Plaintiffs needed to adduce "clear and convincing" evidence of fraud. Greenwood v. Kadoich, 357 A.2d 604, 606 (Pa. Super. 1976). Given this high hurdle, Plaintiffs' reliance on circumstantial inferences does not fit the bill. *See* Pls.' Opp'n Br. at 30 ("It is inconceivable that Seven Z would have expended more than $3 million on store renovations only to turn the store over to Giant Eagle months later."); *id.* at 28 ("Giant Eagle either knew or should have known that Z Pointe agreed to remodel the Moraine Pointe store under the belief that its sublease had been renewed.")

For all of these reasons, Giant Eagle's Motion for Summary Judgment on Plaintiffs' Claims will be granted in part and denied in part.

### B.     Giant Eagle's Motion for Partial Summary Judgment on its Counterclaims

Giant Eagle's Counterclaims 2–6 are premised on a finding that Seven Z did not timely extend the Bridgeville Sublease. Because the Court already has determined that Giant Eagle is not entitled to summary judgment on the claim regarding Plaintiff Seven Z's extension of that sublease, *supra* at 4–5, Giant Eagle's Motion for Partial Summary Judgment on its counterclaims also will be denied.

### C.     Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs contend that because the fuel programs are not authorized under the parties' Retailer's Agreement, summary judgment is warranted on their breach of contract claim. Pls.' Br. (Doc. 572) at 4–23. But as the Court explained above, *supra* at 2, this claim was dismissed at the motion to dismiss stage. As to Plaintiffs' request for summary judgment on a breach of contract claim premised on Giant Eagle's failure to provide them with statements detailing how their advertising monies were spent, Pls.' Br. at 23–26, the Court agrees with Giant Eagle that this claim "does not exist and was never pled." Giant Eagle's Opp'n Br. (Doc. 579) at 2.

Finally, in light of the Court's determination that Plaintiffs' unfair competition claim is barred by the gist of the action doctrine, *supra* at 2, their request for summary judgment on that claim, Pls.' Br. at 27–29, is moot.

Consistent with the foregoing, the Court hereby enters the following:

## II.  ORDER

Giant Eagle's Motion for Summary Judgment on Plaintiffs' Claims (**Doc. 562**) is **GRANTED** as to Counts I, III, V, VI, VII, X, XII (competitor store & cap on fuel program expenses), XVI, XVII, XVIII, XIX, XX, XXI, XXV, XXVI & XXVII and it is **DENIED** as Counts XII (third store & fuel station), XIV & XV; and Giant Eagle's Motion for Summary Judgment on its Counterclaims (**Doc. 564**) as well as Plaintiffs' Motion for Partial Summary Judgment (**Doc. 570**) are **DENIED**.

IT IS SO ORDERED.

June 30, 2023                                             s/Cathy Bissoon
                                                          Cathy Bissoon
                                                          United States District Judge

cc (via ECF email notification):
All Counsel of Record